UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN A BROWN,

    Plaintiff,

v.

DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

CASE NO. 3:17-CV-05524-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: June 29, 2018

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants Department of Corrections, Christina Brule, Mark Stigall, John Campbell, Z. Fiscuss, Ryan Pfaff, Ron Haynes, Katherine Jenson, Christian Dieker, Brandon Heimbigner, and John Hamon's Motion for Summary Judgment. Dkt. 58.[1]

After reviewing the relevant record, the Court finds Plaintiff Kevin A. Brown has failed to overcome Defendants' summary judgment showing that there is no genuine issue of material fact in regarding his Eighth Amendment failure to protect and cruel and unusual punishment

---

[1] The Motion for Summary Judgment was filed on behalf of all Defendants. The Court notes Plaintiff appears to have incorrectly spelled the names of Defendants Brule (spelled "Bruley" by Plaintiff), Stigall (spelled "Siegall" by Plaintiff), Fiscuss (spelled "Figcuss" by Plaintiff), and Jenson (spelled "Katherin Jenson" by Plaintiff). *See* Dkt. 8, 58.

REPORT AND RECOMMENDATION - 1

claims. Further, Plaintiff has failed to state a supervisory liability claim. Therefore, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 58) be granted and this case be closed.

## I. Background

Plaintiff, an inmate currently housed at Stafford Creek Corrections Center, alleges Defendants violated his Eighth Amendment rights when they failed to protect him. Dkt. 8. Plaintiff, first, alleges Defendants Brule, Stigall, Campbell, and Pfaff failed to protect Plaintiff when they transferred Plaintiff to Clallam Bay Corrections Center ("CBCC") after Plaintiff's fiancée notified Defendant Brule that Plaintiff would be harmed at CBCC. *Id*. Second, Plaintiff contends Defendants Jenson, Dieker, Heimbigner, Harmon, and Fiscuss failed to protect Plaintiff from being assaulted by seven inmates when he was housed at CBCC. *Id*. Plaintiff also alleges Defendants Campbell and Haynes are liable under § 1983 because they supervise Defendants Brule, Stigall, Pfaff, Jenson, Dieker, Heimbigner, Harmon, and Fiscuss. *Id*.

Defendants filed the Motion on April 10, 2018. Dkt. 58. Plaintiff filed a Response to the Motion on April 24, 2018. Dkt. 75. Defendants filed their Reply on May 11, 2018. Dkt. 76.

## II. Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III. Discussion

Defendants contend they are entitled to summary judgment regarding Plaintiff's claims that Defendants failed to protect him. Dkt. 58. Defendants also assert Plaintiff's allegations against Defendants Campbell and Haynes fail to state a claim under § 1983. *Id.* The Court agrees. The Court also finds Plaintiff has failed to state a claim upon which relief can be granted as to Defendant Department of Corrections and Plaintiff's allegations that he was subjected to cruel and unusual punishment.

#### A. *Failure to Protect*

Defendants allege there is no genuine issue of material fact regarding whether Defendants failed to protect Plaintiff when Plaintiff was (1) transferred to CBCC and (2) assaulted at CBCC. Dkt. 58.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging an Eighth Amendment violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). The plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

1. Transfer to CBCC

Plaintiff alleges Defendants Brule, Stigall, and Pfaff failed to protect Plaintiff when they transferred him to CBCC after Plaintiff's fiancée called Defendant Brule and expressed concern over Plaintiff's safety at CBCC. Dkt. 8.

   a. Evidence

Plaintiff's evidence[2] shows Defendant was housed at Washington State Penitentiary ("WSP") in January of 2017. Dkt. 75-1, p. 12, Brown Dec. Plaintiff was placed in a unit

---

[2] Plaintiff submitted select pages from what appears to be Defendants Brule, Pfaff, and Haynes responses to interrogatories. *See* Dkt. 75-1, pp. 3-5. Plaintiff did not include the entire responses and did not include the signature

1 | consisting of "whites and Sur[e]ños," with whom Plaintiff has issues. *Id*. Plaintiff informed non-
2 | party correctional officers of his "issues," but he was still placed in the unit. *Id*. After three days,
3 | he was removed from the unit and placed in involuntary protective custody because a threat was
4 | made on his life. *Id*. Plaintiff informed his fiancée, Jessyca Swatman, he was going to be
5 | transferred to CBCC and that if he was sent to CBCC something would happen to him because
6 | the "whites and Sur[e]ños" had put "a green lite (sic)" on him. *Id*.

7 | Ms. Swatman spoke with Defendant Brule at least five times between February 2017 and
8 | March 2017. Dkt. 75-1, p. 7, Swatman Dec. Ms. Swatman informed Defendant Brule that CBCC
9 | was not a safe placement for Plaintiff because he previously had confrontations with groups of
10 | Caucasian and Mexican inmates at WSP who had been transferred to CBCC. *Id*. Ms. Swatman
11 | requested Plaintiff be transferred to Airway Heights Corrections Center ("AHCC") Safe Harbor
12 | Unit. *Id*. Defendant Brule told Ms. Swatman she would override the points Plaintiff needed to be
13 | classified as "medium custody" and send him to AHCC. *Id*.

14 | Defendant Brule disregarded Ms. Swatman's warning and sent Plaintiff to CBCC. Dkt.
15 | 75-1, p. 13, Brown Dec. Plaintiff states Defendant Brule made the final decision to send Plaintiff
16 | to CBCC. *Id*. Plaintiff arrived at CBCC on March 15, 2017. *Id*. On April 29, 2017, Plaintiff was
17 | assaulted by five "white boys" and two "Sureños." *Id*.

18 | Defendants' evidence shows there are two close custody facilities within the Washington
19 | State Department of Corrections ("DOC"), WSP and CBCC. Dkt. 67, Haynes Dec., ¶ 9. Plaintiff
20 | was classified as a close custody inmate during the period in question; and therefore could be
21 | housed only at WSP or CBCC. *See id*.; Dkt. 60, Campbell Dec., ¶ 5. "According to DOC
22 | records, Plaintiff was placed in protective custody at [WSP] due to a report that his life might be

---

24 | page declaring the answers to the interrogatories were sworn under penalty of perjury. Therefore, this is not "evidence" for purposes of a summary judgment determination.

in danger due to other offenders acting strangely around him at that facility." Dkt. 59, Brule Dec., ¶ 4. In 2017, Plaintiff "had no separatees (other listed inmates posing a particularized threat or danger to each other because of past behavior, incident, or threats) located at CBCC preventing his placement there." *Id*. at ¶ 5.

In early 2017, when Plaintiff was transferred to CBCC, Defendant Brule was responsible for review and determination of appropriate placements of offenders in DOC facilities. *See* Dkt. 59, Brule Dec., ¶ 3. Defendant Brule spoke to Ms. Swatman by telephone between February 17, 2017 and March 3, 2017. *Id*. at ¶ 6. Ms. Swatman did not communicate any information to Defendant Brule showing Plaintiff faced a particularized threat at CBCC. *Id*. Defendant Brule did not indicate Plaintiff would not be placed at CBCC or make any commitment that Plaintiff would be returned to AHCC. *Id*.

After speaking with Ms. Swatman, Defendant Brule conferred with Creedance Windle, a member of the WSP Intelligence and Investigations Unit, Chris Newton, a DOC investigator at DOC Headquarters, and a sex offender treatment provider familiar with Plaintiff's record of treatment. *Id*. at ¶ 7. Defendant Brule's conversations with Ms. Swatman, Ms. Windle, Mr. Newton, and the treatment provider confirmed for Defendant Brule that Plaintiff's "placement at CBCC would not place him in harm's way or pose a particularized threat of harm to [Plaintiff]." *Id*.; *see also* Dkt. 59, pp. 4-7.

Defendants' evidence also shows Defendants Campbell, Pfaff, and Stigall were not involved in Plaintiff's transfer from WSP to CBCC in February of 2017. *See* Dkt. 60, Campbell Dec., ¶ 3; Dkt. 70, Pfaff Dec., ¶ 3; Dkt. 71, Stigall Dec., ¶ 5. Both Defendants Campbell and Pfaff testified that they were not involved in Plaintiff's transfer to CBCC and had no knowledge of any particular danger posed to Plaintiff prior to his placement at CBCC. Dkt. 60, Campbell

1 Dec., ¶ 3; Dkt. 70, Pfaff Dec., ¶ 3. Defendant Stigall testified that he left his employment in the
2 DOC Headquarters Classification Unit in early 2014 when he began working as a DOC
3 Information Technology Specialist. Dkt. 71, Stigall Dec., ¶ 3. Defendant Stigall began working
4 for the Washington State Department of Early Learning on August 16, 2017. *Id*. at ¶ 2. Because
5 Defendant Stigall left the Classification Unit in early 2014, he has not been involved in decisions
6 or discussions regarding where an offender should be placed. *Id*. at ¶ 5. "Consequently,
7 [Defendant Stigall] did not participate in decisions or discussions regarding [Plaintiff's]
8 placement in prison during 2017[.]" *Id*.

9        b. Analysis

10     As discussed above, Plaintiff must first meet an objective component by showing "he is
11 incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at
12 834. Plaintiff must also meet a subjective component by showing Defendants acted with
13 deliberate indifference to his health or safety. *Id*.

14     Here, the evidence shows Defendant Brule was notified by Ms. Swatman that Plaintiff
15 previously had confrontations with "groups of White and Mexican inmates at WSP that had
16 already been sent to CBCC." Dkt. 75-1, p. 7, Swatman Dec. However, there is no evidence
17 Plaintiff or Ms. Swatman ever identified any specific individual who posed a threat to Plaintiff's
18 safety. Thus, the evidence shows Ms. Swatman provided Defendant Brule with only a
19 speculative fear that Plaintiff would be assaulted if he was housed in the same facility as
20 members of two different gangs. The Ninth Circuit has held that inmates of opposite gangs
21 placed in a cell with each other, with nothing more, fails to satisfy the Eighth Amendment's
22 standard that prison official must be aware of a specific risk to an inmate. *Labatad v. Corrections*
23 *Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013). Furthermore, speculative concerns of
24

1 | being assaulted do not rise to the level of substantial risk required by the Eighth Amendment. *See*
2 | *Contreras v. Collins*, 50 Fed. App'x 351 (9th Cir. 2002). As such, Plaintiff and Ms. Swatman's
3 | generalized statements that Plaintiff faced a risk of harm if he was housed at CBCC are not
4 | sufficient to show Plaintiff did face a substantial risk of serious harm. *See Williams v. Wood*, 223
5 | Fed. Appx. 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the hands of
6 | other prisoners do not rise to a sufficiently substantial risk of serious harm").

7 | Even if Plaintiff's evidence establishes he faced a serious risk of harm, the evidence fails
8 | to show Defendants Brule, Campbell, Pfaff, and Stigall had subjective knowledge of the risk and
9 | acted with deliberate indifference to the risk of harm.

10 | The evidence, viewed in the light most favorable to Plaintiff, shows that Defendant Brule,
11 | with knowledge of a possible threat to Plaintiff, investigated whether it would be safe to house
12 | Plaintiff at CBCC. Defendant Brule contacted three different individuals to determine if Plaintiff
13 | had any separatees at CBCC. Defendant Brule determined Plaintiff had no separatees at CBCC
14 | and found Plaintiff was qualified for placement at CBCC. As she found no particularized threat,
15 | Defendant Brule determined Plaintiff's "placement at CBCC would not place him in harm's way
16 | or pose a particularized threat of harm to [Plaintiff]." Dkt. 59, Brule Dec., ¶ 7. As such, the
17 | evidence shows Defendant Brule was not aware of a *particularized* threat of harm to Plaintiff.
18 | Further, if she was aware of a *particularized* threat of harm to Plaintiff, she did not act with
19 | deliberate indifference. She investigated whether Plaintiff faced a risk of harm at CBCC and
20 | determined Plaintiff would not be placed in harm's way at CBCC. Therefore, Plaintiff has failed
21 | to show there is a genuine issue of material fact regarding Defendant Brule's alleged failure to
22 | protect Plaintiff when she transferred him to CBCC. *See Labatad*, 714 F.3d at 1161 (finding no
23 | deliberate indifference where the evidence showed the plaintiff and another inmate were housed
24 |

1 in general population together for an extended period of time with no problems, the inmate was
2 not listed as a "separatee" for the plaintiff, and the plaintiff had fought with a member of the
3 other inmate's gang but assured officers the fight was not gang related); *Berg v. Kincheloe*, 794
4 F.2d 457, 459 (9th Cir. 1986) (before being required to take action, the prison officer must have
5 more than a "mere suspicion" that an attack will occur).

6 Plaintiff also alleges Defendants Campbell, Pfaff, and Stigall failed to protect Plaintiff
7 when he was transferred to CBCC. Dkt. 8. The evidence shows Defendants Campbell and Pfaff
8 had no knowledge of a particularized risk of harm to Plaintiff and were not involved in his
9 transfer to CBCC. Further, Defendant Stigall was not working in the Classification Unit at the
10 time Plaintiff was transferred to CBCC. Plaintiff, at most, provided conclusory statements that
11 these three Defendants were involved in his transfer. There is no evidence showing Defendants
12 Campbell, Pfaff, and Stigall were aware of a risk of harm to Plaintiff when he was transferred to
13 CBCC in early 2017 and were involved in the transfer. Accordingly, Plaintiff has failed to show
14 there is a genuine issue of material fact regarding Defendants Campbell, Pfaff, and Stigall's
15 alleged failure to protect Plaintiff when he was transferred to CBCC. *See Nelson v. Pima Cmty.*
16 *Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a
17 factual dispute for purposes of summary judgment."); *See Lujan*, 497 U.S. at 888 (the purpose of
18 summary judgment "is not to replace conclusory allegations of the complaint or answer with
19 conclusory allegations of an affidavit"); *Collins v. County of Kern*, 390 F.Supp.2d 964 (E.D. Cal.
20 2005) (finding insufficient evidence to show defendants knew of and disregarded an excessive
21 risk to the inmate plaintiff's safety when there was no evidence the defendants were aware of a
22 threat to the plaintiff, had anything to do with his transfer to the unit, could stop the transfer, and
23 were working on the day in question).

24

For the above stated reasons, the Court finds no genuine issue of material fact exists regarding Plaintiff's allegations that Defendants Brule, Campbell, Pfaff, and Stigall violated Plaintiff's Eighth Amendment rights when he was transferred to CBCC.

2. Assault at CBCC

Plaintiff next alleges Defendants Jenson, Dieker, Heimbigner, Harmon, and Fiscuss violated Plaintiff's Eighth Amendment rights when they failed to protect him from an assault. Dkt. 8.

a. Evidence

Plaintiff's evidence shows that on April 29, 2017,[3] while housed at CBCC, Plaintiff was approached by a Caucasian inmate, Corey Zaharko, who asked Plaintiff about problems Plaintiff had with "the hommies (sic)" at WSP. Dkt. 75-1, p. 13, Brown Dec. Inmate Zaharko struck Plaintiff in the face and Plaintiff pushed inmate Zaharko away "to stop him from hitting" Plaintiff. *Id*. Plaintiff was then "jumped" by six other inmates (four Caucasian inmates and two Sureños). The seven inmates choked Plaintiff, and punched and kicked Plaintiff in the face, head, and body. *Id*. While Plaintiff was being choked and kicked, Defendants Heimbigner, Harmon, Jenson, Dieker, and Fiscuss remained outside the pod[4] window until they felt it was safe to enter the pod. *Id*. at pp. 13-14.

Once the corrections officers entered the pod, they directed all the inmates to lay on the floor. Dkt. 75-1, p. 14, Brown Dec. Plaintiff stood up to ensure he would not be attacked again and staff directed him to lay down. *Id*. Plaintiff laid down on the floor until he was cuffed. *Id*. His head, mouth, face, and nose were bleeding so he spit blood on the floor because it was hard

---

[3] Plaintiff's declaration states the altercation occurred on April 27, 2017. The remaining evidence indicates the altercation occurred on April 29, 2017. The Court finds the April 27, 2017 date is a typographical error.
[4] A pod is a section of the prison that houses a group of inmates.

REPORT AND RECOMMENDATION - 10

1    to breathe. *Id*. Unnamed correctional officers placed a spit bag on Plaintiff's face, which made it
2    hard for him to breathe. *Id*. Plaintiff was placed in "the hole" in the Intensive Management Unit
3    ("IMU") away from the inmates who attacked him. *Id*.

4        Ms. Swatman was speaking with Plaintiff on the phone on April 29, 2017 when she heard
5    an altercation between Plaintiff and at least one other inmate in the CBCC dayroom. Dkt 75-1, p.
6    7, Swatman Dec. The call was lost and the next day Ms. Swatman attempted to e-mail Plaintiff,
7    but Plaintiff was unable to receive the e-mail. *Id*. Ms. Swatman called CBCC on April 30, 2017
8    and an operator told Ms. Swatman the superintendent of CBCC would call her. *Id*. The
9    superintendent called Ms. Swatman later that day and told her Plaintiff was injured after being
10   attacked by a group of inmates the previous afternoon, was in protective custody, and would not
11   receive an infraction. *Id*.

12       Defendants' evidence shows that, on April 29, 2017, a fight began involving Plaintiff and
13   inmate Cory Zaharko regarding prison etiquette and other inmates joined in the fight. Dkt. 67,
14   Haynes Dec., ¶ 6; Dkt. 72, Zaharko Dec., ¶ 4. When the fight began, Defendant Dieker
15   immediately radioed available officers that a fight was occurring. Dkt. 64, Dieker Dec., ¶ 4.
16   "Officers came from both inside and outside the unit, assembling first at the . . . pod dayroom
17   door." *Id*. The officers immediately began banging on the windows and "calling the inmates to
18   stop fighting and to get down on the floor." *Id*. In his position as a booth officer, Defendant
19   Dieker is instructed to wait until a sufficient number of officers have assembled before opening a
20   pod door to ensure "the responding officers are not outnumbered, assaulted themselves, or taken
21   hostage and to make sure another event requiring a response is not happening somewhere else in
22   the unit." *Id*. Defendant Dieker opened the dayroom door after a sufficient number of responding

23

24

officers had assembled. *Id*. at ¶ 4(a).[5] After Defendant Dieker opened the dayroom door, all of the responding officers immediately moved into the dayroom area. *Id*. Shortly after, additional responding officers arrived and entered the dayroom. *Id*. "As soon as the officers entered the dayroom, all fighting ceased and all of the inmates in the dayroom were on the floor." *Id*.

Defendants Jenson and Fiscuss were assigned as floor officers at the time of the fight. *See* Dkt. 65, Fiscuss Dec., ¶ 3; Dkt. 69, Jenson Dec., ¶ 3. Both Defendant Jenson and Defendant Fiscuss responded to the pod dayroom within thirty seconds of hearing on the radio a fight was underway. Dkt. 65, Fiscuss Dec., ¶ 3; Dkt. 69, Jenson Dec., ¶ 3. Defendant Heimbigner also responded to the radio call and assembled with the other responding officers outside the dayroom door. Dkt. 68, Heimbigner Dec., ¶ 3. Defendants Jenson, Fiscuss, and Heimbigner were banging on the window, and yelling at the inmates to stop fighting and get on the floor. Dkt. 65, Fiscuss Dec., ¶ 3; Dkt. 69, Jenson Dec., ¶ 3; Dkt. 68, Heimbigner Dec., ¶ 3. Most inmates complied with the directives and were on the floor by the time the booth officer opened the dayroom door. Dkt. 65, Fiscuss Dec., ¶¶ 3-4; Dkt. 69, Jenson Dec., ¶ 3; Dkt. 68, Heimbigner Dec., ¶ 3. Within seconds of the officers entering the dayroom, all of the inmates were on the floor and the fighting had stopped. Dkt. 68, Heimbigner Dec., ¶ 3.

Defendant Harmon responded to a radio call for a "second phase response" because of multiple fights with multiple inmates. Dkt. 66, Harmon Dec., ¶ 3. Defendant Harmon arrived at the pod dayroom after the dayroom door had been opened. *Id*. He observed all the inmates on the floor and no fight was occurring. *Id*. Defendant Harmon assisted Defendant Heimbigner in escorting Plaintiff. *Id*. at ¶ 4; Dkt. 68, Heimbigner Dec., ¶ 4. Plaintiff was in handcuffs and, as he was being escorted, Plaintiff kicked inmate Nitschke hard enough to change inmate Nitschke's

---

[5] Defendant Dieker's declaration contains two paragraphs identified as "4." *See* Dkt. 64, Dieker Dec., p. 2. The Court will refer to the second paragraph "4" as "4(a)."

position on the floor. Dkt. 66, Harmon Dec., ¶ 4; Dkt. 68, Heimbigner Dec., ¶ 5; *see also* Dkt. 60, Campbell Dec., ¶ 6; Dkt. 69, Jenson Dec., ¶ 5. Defendants Harmon and Heimbigner assisted Plaintiff to the floor to prevent Plaintiff from further assaulting someone. Dkt. 66, Harmon Dec., ¶ 4; *see also* Dkt. 69, Jenson Dec., ¶ 5. Defendant Heimbigner gave multiple directives to Plaintiff to stop his resistive movements. Dkt. 68, Heimbigner Dec., ¶ 5. Defendant Heimbigner then placed a spit sock over Plaintiff's head because of his elevated and aggressive actions and leg restraints were applied to Plaintiff. Dkt. 66, Harmon Dec., ¶ 4; Dkt. 68, Heimbigner Dec., ¶ 5.

Surveillance video dated April 29, 2017 shows Plaintiff and inmate Zaharko walk towards the staircase in the prison unit. Dkt. 61, Caulkins Dec., ¶¶ 4, 6; Dkt. 74. The correctional officer in the central booth in the unit has partial visibility of the area under the staircase so "[t]his is a 'high level trading' area for inmates[.]" Dkt. 61, Caulkins Dec., ¶ 6. The video shows Plaintiff and inmate Zaharko have physical contact. *Id.* at ¶ 8; Dkt. 74. Plaintiff appears to take a step back and inmate Zaharko is pushed against a wall. Dkt. 61, Caulkins Dec., ¶ 8; Dkt. 74. An inmate runs to assist inmate Zaharko and other inmates join the fight. Dkt. 61, Caulkins Dec., ¶ 9; Dkt. 74. The fight moves out of the camera views. Dkt. 61, Caulkins Dec., ¶ 10, Dkt. 74. Plaintiff enters the camera view and removes his shirt, he then leaves the camera view. Dkt. 61, Caulkins Dec., ¶¶ 11-12; Dkt. 74. Seventy seconds after the initial contact between Plaintiff and inmate Zaharko corrections officers enter the unit. *See* Dkt. 61, Caulkins Dec., ¶¶ 8, 13; Dkt. 74. Four minutes after corrections officers enter the unit, Plaintiff kicked inmate Nitschke, who was laying on the floor, in the leg causing inmate Nitschke's body to pivot. Dkt. 61, Caulkins Dec., ¶ 16; Dkt. 74. Correctional officers "took [Plaintiff] to the ground and [Plaintiff] was combative.

1  The Officers put a spit sock on [Plaintiff] due to his behavior." Dkt. 61, Caulkins Dec., ¶ 16; *see*
2  *also* Dkt. 74.

3                 b. Analysis

4        Here, the evidence shows Plaintiff was engaged in a fight with several inmates at CBCC.
5  As soon as the fight began, Defendant Dieker radioed for correctional officers to respond to the
6  fight. Seventy seconds after the fight began, Defendants Fiscuss, Jenson, and Heimbigner entered
7  the dayroom of the pod where the fight was occurring. Defendant Harmon responded to the
8  second phase radio call. When he arrived at the location of the fight, the fighting had stopped and
9  all inmates were complying with the correctional officers. After the fight ended and Plaintiff was
10 being escorted out of the dayroom, video evidence shows Plaintiff kicked another inmate.[6]

11       The evidence shows Defendants Dieker, Fiscuss, Jenson, Heimbigner, and Harmon did
12 not fail to protect Plaintiff. There is no evidence or allegations that these five Defendants were
13 aware Plaintiff faced any threat to his safety prior to the fight. Additionally, there is no evidence
14 showing these five Defendants acted with deliberate indifference once they became aware of the
15 fight. Once the fight began, Defendant Dieker responded immediately, requesting assistance.
16 Within thirty seconds of the fight beginning, officers, including Defendants Fiscuss, Jenson, and
17 Heimbigner, began pounding on the dayroom door window and yelling directives to the inmates.
18 The majority of the inmates complied and the dayroom doors were opened seventy seconds after
19 the initial physical contact between Plaintiff and inmate Zaharko. Therefore, the Court finds
20 there is no evidence showing Defendants Dieker, Fiscuss, Jenson, Heimbigner, and Harmon

---

[6] While Plaintiff contends he was the victim of the assault, he does not dispute he kicked an inmate while he was being escorted from the dayroom. Further, video evidence contradicts several portions of Plaintiff's testimony, discrediting portions of Plaintiff's version of the fight. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (finding the lower court should have viewed the facts as depicted by the videotape when the plaintiff's version of the events were "so utterly discredited by the record that no reasonably jury could have believed him").

REPORT AND RECOMMENDATION - 14

acted with deliberate indifference or failed take reasonable measures to stop the inmate fight. *See Collins*, 390 F.Supp.2d at 974-75 (finding defendants were not deliberately indifferent when the evidence showed they took prompt action to stop an inmate fight, secure the area, and ensure the plaintiff received medical care); *Sanchez v. Andruss*, 2013 WL 3152395, at *4 (N.D. Cal. June 19, 2013) (internal quotations omitted) ("Correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety."); *George v. Uribe*, 2012 WL 993254, at *8-9 (S.D. Cal. Feb. 17, 2012) (finding the plaintiff failed to state a failure to protect claim when one officer activated an alarm, one officer responded to the alarm, and both provided verbal commands to stop fighting).

Accordingly, the undersigned finds there is no genuine issue of material fact regarding Plaintiff's allegation that Defendants Dieker, Fiscuss, Jenson, Heimbigner, and Harmon violated Plaintiff's Eighth Amendment rights by failing to protect him during the fight on April 29, 2017.

B. *Supervisory Liability*

Plaintiff contends Defendants Campbell and Haynes violated Plaintiff's Eighth Amendment rights because these two Defendants supervise the other named Defendants. *See* Dkt. 8; Dkt. 75-1, pp. 21-22, Brown Dec. Defendants assert Plaintiff has failed to allege Defendants Campbell or Haynes personally participated in the alleged unconstitutional actions. Dkt. 58, pp. 11-12.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show how a defendant caused the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The claim may not be brought on the sole theory that a supervisor is liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show the individual

1 | defendant participated in or directed the alleged harm, or knew of the harm and failed to act to
2 | prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S.
3 | 1154 (1999).

4 |      Here, Plaintiff specifically states he is suing Defendants Campbell and Haynes because of
5 | their supervisory positions. Dkt. 75-1, pp. 21-22, Brown Dec. He has not provided any
6 | allegations or evidence showing Defendant Campbell participated in or directed Plaintiff's
7 | transfer to CBCC. Further, he has not provided any allegations or evidence showing Defendant
8 | Haynes participated in or directed the alleged harm during the April 29, 2017 fight. A § 1983
9 | claim cannot be based solely on a supervisor's relationship to his subordinates. Therefore,
10 | Plaintiff has not alleged sufficient facts to support a failure to protect claim against Defendants
11 | Campbell or Haynes. Accordingly, the Court finds the claims alleged against Defendants
12 | Campbell and Haynes should be dismissed.

13 |     C.  *Defendant Department of Corrections*

14 |      Plaintiff names the Department of Corrections as a Defendant in this action. *See* Dkt. 8.
15 | Initially, the Court notes Plaintiff has not clearly pled facts showing what action or inaction the
16 | Department of Corrections took which resulted in violation of Plaintiff's constitutional rights.
17 | *See* Dkt. 8; 75. Regardless, the Department of Corrections is not proper Defendant. Section 1983
18 | applies to the actions of "persons" acting under the color of state law. The Department of
19 | Corrections, as an arm of the state of Washington, is not a "person" for purposes of a § 1983
20 | civil rights action. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65, 71 (1989).
21 | Therefore, the Department of Corrections is a state agency which cannot be sued under § 1983.
22 | Accordingly, the Court finds the Department of Corrections should be dismissed from this
23 | action. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (to state a claim under §
24 |

1983, a plaintiff must show the constitutional violation was proximately caused by a person acting under color of state law).

D. *Cruel and Unusual Punishment*

Plaintiff also contends Defendants Pfaff and Stigall violated Plaintiff's Eighth Amendment rights when they placed him in administrative segregation for three months. Dkt. 8; Dkt. 75-1, pp. 21-22, Brown Dec.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane prisons. *Farmer*, 511 U.S. at 832. Under the Eighth Amendment, prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* "To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." *Id.* at 834 (internal quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id.* (*quoting Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Plaintiff does not have protected interest in his housing classification. *See Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995), *as amended*, 75 F.3d 448 (9th Cir. 1995) (hardship associated with administrative segregation, such as confinement to one's cell for a lengthy period of time, does not violate the Due Process Clause because there is no liberty interest in remaining in general population). Furthermore, Plaintiff provides only conclusory statements that Defendants Stigall or Pfaff were responsible for his placement in administrative segregation for three months after the April 2017 fight. *See* Dkt. 8; Dkt. 75-1. As such, Plaintiff's bare assertions are not sufficient to state an Eighth Amendment claim. *See Leer v. Murphy*, 844

1 | F.2d 628, 633 (9th Cir. 1988) (Sweeping conclusory allegations against an official are
2 | insufficient to state a claim for relief.)

3 | Further, the evidence fails to support Plaintiff's conclusory allegations. Plaintiff was
4 | infracted following the April 29, 2017 fight. *See* Dkt. 75-1, p. 15, Brown Dec. Plaintiff states that
5 | DOC Headquarters punished Plaintiff by placing him "in the hole on an IMS program" for six
6 | months. *Id*. Plaintiff does not provide evidence showing any named Defendant was responsible
7 | for his disciplinary punishment. Additionally, neither Plaintiff's infraction report nor the
8 | disciplinary hearing minutes identify Defendants Stigall or Pfaff. *See* Dkt. 8, pp. 18-19, 28.

9 | Evidence regarding Defendant Pfaff shows Defendant Pfaff wrote a classification record
10 | in June of 2017 stating Plaintiff had been assaulted by multiple inmates based on his review of
11 | infraction reports. Dkt. 70, Pfaff Dec., ¶ 4. Defendant Pfaff had not reviewed the video
12 | surveillance and, if he had, he "would not have written what [he] did" in Plaintiff's classification
13 | record because he was not aware Plaintiff had kicked another inmate. *Id*. Defendant Pfaff
14 | recommended a custody override for Plaintiff, but his recommendation was not adopted. *Id*.
15 | There is no evidence Defendant Pfaff had any input on Plaintiff's placement in administrative
16 | segregation following the April 29, 2017 fight. As to Defendant Stigall, evidence shows
17 | Defendant Stigall was not employed in the DOC Classification Unit or involved in any inmate
18 | placements in 2017, when Plaintiff was placed in administrative segregation. Dkt. 71, Stigall
19 | Dec., ¶¶ 2, 5. Plaintiff provided no evidence to refute this.

20 | A review of the evidence shows Defendants Pfaff or Stigall did not participate in
21 | Plaintiff's placement in administrative segregation for three months following the April 29, 2017
22 | fight. Therefore, Plaintiff has failed to show there is a genuine issue of material fact as to the
23 |
24 |

allegation that Defendants Pfaff and Stigall violated Plaintiff's Eighth Amendment rights by placing him in administrative segregation for three months.

For the above stated reasons, the Court finds Plaintiff has failed to sufficiently state claim or raise a genuine issue of material fact as to the allegation that Defendants Pfaff and Stigall violated Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment. Accordingly, the Court finds Plaintiff's cruel and unusual punishment claim should be dismissed.

### IV. Conclusion

The Court concludes the evidence, viewed in the light most favorable to Plaintiff, shows no genuine issues of material fact exist regarding Plaintiff's failure to protect and cruel and unusual punishment claims. As such, Plaintiff has not overcome Defendants' summary judgment showing. Further, Plaintiff has failed to state a claim against Defendants Department of Corrections, Campbell, and Haynes. Therefore, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 58) be granted and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 29, 2018, as noted in the caption.

Dated this 8th day of June, 2018.

David W. Christel
United States Magistrate Judge